IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| OLDE PRAIRIE BLOCK OWNER, LLC, | ) | Bankruptcy No. 10 B 22668 |
| | ) | |
| Debtor. | ) | |

### OPINION ON CENTERPOINT'S MOTION TO AMEND [Docket No. 347]

This Motion is the latest salvo in a battle between Olde Prairie Block Owner, LLC, ("Debtor") and CenterPoint Properties Trust ("CenterPoint") over efforts of Debtor to retain ownership of its real estate which secures a CenterPoint loan. Debtor filed under Chapter 11 of the Bankruptcy Code on May 18, 2010. Soon after, on June 2, 2010, CenterPoint moved to dismiss Debtor's bankruptcy case, or in the alternative to modify the automatic stay so as to permit a foreclosure action to proceed. The stay motion was heard separately from the motion to dismiss, and a preliminary hearing was held on June 22 and 23, 2010. Following that hearing, for reasons stated from the bench, it was found and held that there was a reasonable likelihood that Debtor would prevail at a final hearing.

The final hearing on the stay motion was held, and evidence was taken including evaluations of property values presented by experts called by each party. On September 17, 2010, (the last day agreed to by the parties for ruling on the motion before the stay would expire by law)[1] it was announced from the bench that CenterPoint's motion would be conditionally denied,

---

[1] Under the Bankruptcy Code, motions for stay relief must move at an expedited pace. *See* 11 U.S.C. § 362(e).

and oral remarks from the bench preliminarily explained the forthcoming ruling (the "Oral Remarks"). Because the creditor's loan was found fully secured and the value of collateral was not declining, it was announced that the stay motion would be denied. Additionally, some doubt was expressed as to the opinion of each party's expert. Given these weaknesses, Debtor was not then seen to have an equity cushion in its properties. No specific findings were made as to values of the subject properties, but it was opined that the CenterPoint loan was fully secured and values of the properties were not diminishing.

On September 28, 2010, an order was entered *nunc pro tunc* to September 17, 2010, (the "Stay Relief Order") conditionally denying CenterPoint's stay motion.[2] That Order attached a transcript of the Oral Remarks. Both the Oral Remarks and the Stay Relief Order provided that a

---

[2] The Stay Relief Order read in full:
   This matter coming on to be heard on the Motion to Dismiss Chapter 11 Case for Cause or, in the Alternative, to Lift the Automatic Stay to permit Foreclosure Action to Proceed and Retaining Court-Appointed Receiver (the "Lift Stay Motion") filed by CenterPoint Properties Trust ("CenterPoint"), and after reviewing the argument, evidence, and pleadings presented by CenterPoint and the Debtor, and as more completely described in the transcript of the proceedings before this Court on September 17, 2010 (the "Ruling"), *which the court shall supplement in a subsequent written ruling (the "Written Ruling")*, IT IS HEREBY ORDERED that:
   1. CenterPoint's Lift Stay Motion is conditionally denied for the reasons identified by the Court, and on the conditions set forth, in the ruling from the bench, the transcript of which is adopted and incorporated by reference herein and attached hereto as exhibit A.
   2. CenterPoint and the Debtor are hereby ordered to perform all of the acts required in the Ruling including without limitation (i) the Debtor's timely payment of property taxes and repairs to its properties as required by the City of Chicago, without allowing CenterPoint's collateral to be charged, and (ii) the filings on or before October 1, 2010, (a) by the Debtor of an Amended Plan for this case as directed, and (b) by CenterPoint a report with respect to the pending condemnation action concerning the Debtor's property in the Circuit Court of Cook County, Illinois, respectively, and delivery of required document copies to Debtor's counsel, all as required and set forth in Exhibit A.
   3. This Order is entered nunc pro tunc as of September 17, 2010, when the Ruling was announced.
   4. Ruling is reserved on alternative Motion of CenterPoint to Dismiss this Chapter 11 Case.
   (emphasis added).

more complete "Written Ruling" would be entered later, and neither party objected. On October 29, 2010, Findings of Fact and Conclusions of Law [Docket No. 313] (the "Written Ruling") were made and ordered to be entered. In the Written Ruling, it was concluded that, while some market evidence corroborated the opinion of Debtor's expert, the opinion of CenterPoint's expert should be rejected entirely. Therefore, it was found and concluded that the total value of all subject properties was $81,150,000, giving Debtor an equity cushion over CenterPoint's asserted claim.

Appraisals of real estate are admissible when prepared by recognized experts in real estate valuation who use accepted methods and proper assumptions for such evaluations. *See* Fed. R. Evid. 702. However, those methods do not have scientific weight and usually do little more than provide useful opinions as to the high and low range of values that would-be buyers and sellers of the real estate would offer or demand after using the same method. Then it usually remains for the judge to choose which of the calculations of value used the right comparables, the right capitalization rate and other factors, and whether the opinions were corroborated by some market indications. The judge then usually adjusts one or another appraisal to a point within the high and low ranges of value.

However, once it was determined here that the opinion of CenterPoint's expert was totally flawed by its false assumption as to highest and best use, the only evidence remaining was that supplied by Debtor's expert, which was partially corroborated by market history. Therefore, the doubts implied in the Oral Remarks from the bench as to strength of valuation by Debtor's appraiser were only concerns based on the Court's experience in trials of property valuations that never produced certainty and often were far off from ultimate sales. Those doubts based on

experience that were voiced could not in the end be relied on in place of the only evidence that remained to be considered once CenterPoint's expert was rejected.

CenterPoint now moves to amend the Written Ruling pursuant to Rule 7052 Fed. R. Bankr. P. It seeks to have the Written Ruling amended, but does not attack the Stay Relief Order which denied its Motion to Modify Stay. For reasons discussed below, CenterPoint's motion is timely and will be granted in part, but mostly denied.

## DISCUSSION

## I. CENTERPOINT'S MOTION TO AMEND WAS TIMELY FILED

A motion for amended or additional findings must ordinarily be filed within fourteen days after entry of judgment. Fed. R. Bankr. P. 7052. However, when a written opinion is entered after oral remarks and that opinion includes factual findings that were not contained in the oral remarks, the party seeking relief may have additional time to file its motion. *See Fin. Servs. Corp. of Midwest v. Weindruch*, 764 F.2d 197, 199 (7th Cir. 1985) (suggesting in dicta that additional time under Fed. R. Civ. P. 52(b) might be appropriate "if the [movant's] only complaint was about a finding that the judge added in his [later order]").

CenterPoint filed its Motion to Amend on November 12, 2010, forty-five days after the Stay Relief Order was entered, but only fourteen days after the Written Ruling was entered. Because CenterPoint complains of assertedly new and contradictory factual findings in the Written Ruling that it could not have objected to within fourteen days of entry of the Stay Relief Order, its current Motion to Amend should be considered timely. Moreover, Debtor has not objected to the timeliness of CenterPoint's Motion. Therefore, the Motion to Amend is deemed timely filed.

## II. CENTERPOINT'S MOTION TO AMEND FINDINGS WILL BE GRANTED IN PART AND DENIED IN PART

"On a party's motion . . ., the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b) (made applicable here by Fed. R. Bankr. P. 7052).

> Motions made under Fed. R. Civ. P. 52(b) . . . are not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories. Instead, these motions are intended to correct manifest errors of law or fact or to present newly discovered evidence.

*Evans, Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976).

CenterPoint does not discuss these standards for granting relief under Rule 52(b), but it appears the grounds for CenterPoint's motion are four separate asserted errors of law: (1) that there was no authority to make new findings in the Written Ruling; (2) that the law of the case doctrine barred the value findings made subsequent to the Oral Remarks; (3) that it was error to find that Debtor proposed a reasonable plan that was confirmable in a reasonable time; and (4) that it was error to rely on a learned treatise cited by its expert in testimony.

### A. The Later Filing of Written Ruling Was Permitted Under the Order Denying Stay Relief

CenterPoint's first argument is that there was no authority to enter the later Written Ruling. Specifically, it argues that a court cannot on its own amend findings under Rule 52(b) Fed. R. Civ. P. or any other authority, and that even if Rule 52(b) did permit that, a court could not act outside the fourteen-day period prescribed by Rule 7052 Fed. R. Bankr. P. This argument overlooks a separate source of authority for the filing of the Written Ruling: the Stay Relief Order itself. The Written Ruling was not entered upon a *sua sponte* motion under Rule 7052 or

any other Rule, but under the authority of and as forecast by the Stay Relief Order, which explicitly provided that the Oral Remarks would be supplemented by later written findings and conclusions. CenterPoint did not object to that provision and has not appealed the Stay Relief Order. *See In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) (orders refusing to lift or modify the automatic stay are final and appealable).

CenterPoint also argues that the Written Ruling did not merely "supplement" or "explain" the Oral Remarks, as permitted in the Stay Relief Order, because the Written Ruling differed from the Oral Remarks as to whether an equity cushion existed. This semantic argument relies on a narrow, incorrect definition of "supplement." A "supplement" is: "[s]omething added to complete a thing, make up for a deficiency, or extend or strengthen the whole" or "[a] section added to a book or document to give further information or to correct errors." *The American Heritage Dictionary of the English Language* 1292 (1981). It was clear that the Oral Remarks were not final. Those Remarks were lacking in detail: no actual dollar amounts were mentioned for the amount of debt or the value of any parcel of Debtor's property. Moreover, the Court's concerns were expressed as to the strength of opinions by both appraisers, concerns that were to be dealt with in the Written Ruling. The Written Ruling, therefore, was to fill in the obvious gaps in discussions of evidence relevant to the stay motion and were to supplement and flesh out the Oral Remarks, as provided in the Stay Relief Order.

Because the Stay Relief Order provided for a subsequent Written Ruling and the ultimate Findings did supplement the Oral Remarks, there was no error of law regarding authority to enter the Written Ruling, including the specific findings as to values now contested.

**B. The Law of the Case Doctrine Does Not Bar the Written Findings of Value**

"As a general principle of judicial decision-making, the doctrine of the law of the case establishes a presumption that a ruling made at one stage of the proceedings will be adhered to throughout the suit." *Alston v. King*, 157 F.3d 1113, 1116 (7th Cir. 1998) (citing *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). The doctrine "is a flexible rule, which 'merely expresses the practice of courts generally to refuse to reopen what has been decided . . . .'; it is 'not a limit on their power.'" *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998) (quoting *Messinger*, 225 U.S. at 444). The strength of that presumption "varies with the circumstances; it is not a straitjacket," *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995), and is especially weak when a decision is "avowedly tentative," *see Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir. 1991).

CenterPoint argues that the law of the case doctrine bars the written finding as to property value because of the earlier oral statement from the bench that Debtor's realty lacked a significant equity cushion even though its value fully secured the creditor's lien. However, that oral statement as to value was clearly tentative as the Court prepared to analyze the large volume of evidence, including thick appraisal opinions. The Oral Remarks were made to provide guidance to counsel as to the general reasons that stay relief would be denied. It was stated several times in those Oral Remarks that final, formal, and written findings of fact and conclusions of law would be entered later after the Stay Relief Order was entered. Further, the Oral Remarks contained no actual findings as to the dollar amounts of the debt owed by Debtor to CenterPoint or the values of Debtor's various properties. Finally, the Written Ruling more fully gave grounds for the prior Order, and did not change the Order.

For all of these reasons, it is clear that the Oral Remarks were tentative, to be supplemented later by the Written Ruling. Therefore, the law of the case doctrine does not bar the later precise finding as to values of Debtor's properties, which supported the same result as originally announced but with added findings as to debt due and values of the parcels involved.

## C. CenterPoint Cannot Relitigate the Issue of Whether Debtor Filed a Plan of Reorganization That Had a Reasonable Possibility of Confirmation Within a Reasonable Time

CenterPoint next argues that it was error to find that Debtor had filed a plan of reorganization that had a reasonable possibility of confirmation within a reasonable time. In support, it argues that Debtor's plan cannot be confirmed until August 2011. CenterPoint does not explain how it arrived at that date, which does not appear to be supported by the record.[3] Moreover, CenterPoint earlier raised this issue in the Second Renewed Motion of CenterPoint Properties Trust to Lift the Automatic Stay to Permit Foreclosure Action to Proceed [Docket No. 252], which was denied by Order [Docket No. 327] for reasons stated on the record on November 2, 2010. That Order was not appealed. *See In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) (orders refusing to lift or modify the automatic stay are final and appealable). Therefore, CenterPoint has not shown an error in the determination that Debtor may be able to confirm a Plan and cannot now relitigate the issue.

## D. Statements in the Written Ruling Regarding Contents of *The Appraisal of Real Estate* Will Be Stricken

CenterPoint's final argument for amending the Written Ruling is that it was error to rely

---

[3] Debtor is making progress towards possible plan confirmation. The next step, a hearing to consider the approval of the disclosure statement, is scheduled for December 10, 2010, at 11:30 A.M., and trial on issues involved in Debtor's counterclaim to the CenterPoint claim is scheduled for February 3, 4, 7, 8, 9, 10, and 11, 2011 (Final Pretrial Order [Docket No. 258]).

upon *The Appraisal of Real Estate*, a treatise relied on and cited by CenterPoint's expert, to judge that expert's credibility. In the Written Ruling, the opinion of CenterPoint's expert was rejected in part because the method he used to account for holding costs was not found in the thirteenth edition of *The Appraisal of Real Estate* as he had testified it was. That particular discussion was based on a mistaken belief that the treatise had been admitted into evidence, which it was not, although a page from it was argued and referred to by Debtor's counsel. Therefore, CenterPoint's Motion to Amend will be granted in part to strike the critique of the expert's technique based upon that treatise. *See Weise v. United States*, 724 F.2d 587, 590–91 (7th Cir. 1984) (approving consideration of learned treatises and articles when marked as evidence and not objected to at trial).

This does not change the ultimate outcome, however. The primary and dispositive reason for rejecting the opinion of CenterPoint's expert was his mistaken selection of mixed-use development as the highest and best use of Debtor's properties, an assumption that led to his low opinion of value. CenterPoint has not challenged that part of the reasoning in the Written Ruling, and thus it stands to support the ultimate Findings and Conclusions as to values of Debtor's properties.

## CONCLUSION

CenterPoint's Motion will be granted in part and denied in part by separate order. The Written Ruling will be amended to strike the critique of the opinion of CenterPoint's expert based on the treatise *The Appraisal of Real Estate*, which was not admitted into evidence. However, the remainder of the Written Ruling will stand.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 10th of December, 2010.