IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: ) | | Chapter 11 |
| ) | | |
| OLDE PRAIRIE BLOCK OWNER, LLC, ) | | Bankruptcy No. 10 B 22668 |
| ) | | |
| Debtor. ) | | |

### MEMORANDUM OPINION DISMISSING COUNT II WITH PREJUDICE

The latest dispute between Olde Prairie Block Owner, LLC, (the "Debtor") and CenterPoint Properties Trust ("CenterPoint") in this hotly contested bankruptcy case is whether or not Count II of Debtor's Objection and Counterclaim [Docket No. 312] to CenterPoint's bankruptcy claim should now be dismissed with prejudice. For reasons stated below, it will be ordered that the prior order dismissing Count II will be amended to dismiss that Count with prejudice. Debtor's pending motion to extend for an indefinite period Debtor's right to file an amended Count II will be denied.

## I. HISTORY OF DEBTOR'S COUNTERCLAIMS

### A. Litigation in State Court

Debtor's counterclaims have their genesis in a state-court foreclosure proceeding initiated by CenterPoint. In that proceeding, Debtor's first set of counterclaims against CenterPoint sought (1) rescission of CenterPoint's note and mortgage based on financial duress and (2) damages for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Both counterclaims related to CenterPoint's alleged wrongful conduct during loan negotiations. Those counterclaims were stricken for failure to state causes of action, but Debtor was given leave to

amend.

Debtor then filed amended counterclaims related to the loan negotiations seeking (1) damages for breach of contractual duty to negotiate in good faith, (2) rescission of the note and mortgage based on financial duress, (3) damages for violations of the Illinois Consumer Fraud and Deceptive Business Practices Act. Those counterclaims were again stricken for failure to state causes of action, but Debtor was again given leave to amend.

Debtor again filed amended counterclaims in the state-court foreclosure proceeding, but those counterclaims were never addressed by the state-court judge. Debtor filed its bankruptcy petition on May 18, 2010, while those counterclaims were pending, effectively halting the foreclosure proceeding.

### B. Litigation in this Court

CenterPoint filed a claim in Debtor's bankruptcy case asserting more than $48 million due on its secured debt.

Debtor's various claims against CenterPoint surfaced here in the form of counterclaims to CenterPoint's bankruptcy claim against Debtor. Those counterclaims were required by order to be repleaded in form as required of counterclaims in an Adversary proceeding.[1] Moreover, the

---

[1] Counterclaims to claims are sometimes to be filed by Adversary proceedings, Fed. R. Bankr. P. 3007(b), 7001, a salutary requirement that ensures that parties are summoned before a Court if that is needed to obtain *in personam* jurisdiction, and also ensures that the pleadings are structured with clarity so as to promote efficient adjudication. This is required when the relief sought is listed in Rule 7001. It is not clear here that the relief sought in the objection to claim is included in Rule 7001. Nevertheless, pursuant to order the pleadings were recast in Adversary pleading form, the Adversary Rules were applied to this matter pursuant to Rule 9014(c) Fed. R. Bankr. P., and all parties here had already appeared and submitted to the Court's *in personam* jurisdiction. Therefore, no party filed a separate Adversary proceeding and each thereby waived any necessity for an Adversary proceeding.

parties consented in writing [Docket Nos. 346, 350] to the bankruptcy judge finally adjudicating all the claims, even if they might lie under related and not core jurisdiction. *See* 28 U.S.C. § 157.

Debtor's Supplemental Amended Objection to CenterPoint's claim [Docket No. 312] asserted counterclaims in five Counts. In Count I, which was related to the negotiation of the note and mortgage, Debtor sought rescission of the note and mortgage based on asserted economic duress. In the remaining Counts, which concerned CenterPoint's activities related to a condemnation proceeding, Debtor sought damages for alleged tortious interference with settlement negotiations (Count II), breach of the implied contractual duty of good faith and fair dealing (Count III); breach of fiduciary duty (Count IV); and negligence (Count V).

In a motion presented on October 18, 2010, CenterPoint moved to dismiss all these counterclaims for asserted failure to state causes of action. On October 20, 2010, Count II was dismissed without prejudice [Docket No. 286] for failure to plead a plausible claim. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–52 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"). However, Debtor was given leave to amend Count II.

The parties were ordered to provide briefings on the remaining counts. On November 24, 2010, CenterPoint's motion to dismiss was denied as to Count III, which was subsequently set for trial, and the parties were ordered to brief the issue of whether Counts I, IV, and IV should be dismissed with or without prejudice. On December 10, 2010, Counts I, IV, and V were dismissed with prejudice [Docket No. 419] pursuant to Rule 41(b) Fed. R. Civ. P. (made applicable by Rule 7041 Fed. R. Bankr. P.).

None of the dismissal orders were yet certified for immediate appeal pursuant to Rule

54(b) Fed. R. Civ. P. (made applicable by Rule 7054 Fed. R. Civ. P.), it being intended that any appeals from orders resolving the five Counts of the Counterclaim should, to enable efficient review, proceed on the same schedule.

## II. DEBTOR DID NOT STATE A PLAUSIBLE CLAIM FOR RELIEF FOR TORTIOUS INTERFERENCE

### A. Allegations Relevant to Count II

The following facts were pleaded in Count II:

CenterPoint is Debtor's principal secured creditor, having extended a loan to Debtor in February 2008 to refinance Debtor's then-existing debt. CenterPoint's loan is secured by substantially all of Debtor's property, which includes two parcels of real estate near McCormick Place in Chicago, Illinois, and a long-term, rent-free lease of parking spots in the McCormick Place parking garage.

In early 2008, the Metropolitan Pier and Exposition Authority (the "MPEA"), the entity responsible for McCormick Place, expressed interest in acquiring the smaller of Debtor's real estate parcels. In March 2008, the MPEA sent Debtor an offer to purchase the parcel for $17.7 million, which was based on an appraisal that the MPEA had commissioned. That offer was not accepted, so in June 2008 the MPEA filed a condemnation proceeding to acquire the property.

While that proceeding was pending, it is alleged that Debtor entered into settlement discussions with the MPEA that assertedly resulted in discussion of a possible $22 million offer for the property in the Fall of 2008. That purportedly possible settlement, however, was never documented or consummated. Debtor alleges that the settlement negotiations ceased because John Gates, a founder and former C.E.O. of CenterPoint and a director of the MPEA,

"interfered" with the negotiations in furtherance of CenterPoint's efforts to gain control of all property that compromised its security for itself. As a result, Debtor allegedly did not have sufficient funds to repay CenterPoint's loan when it came due in February 2009.

### B. Count II as Pleaded Was Not Plausible

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8 (made applicable here by Fed. R. Bankr. P. 7008).[2] To survive a motion to dismiss made under Rule 12(b)(6) Fed. R. Civ. P. (made applicable here by Fed. R. Bankr. P. 7012(b)), a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). A claim is plausible when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Bell Atl.*, 550 U.S. at 556).

Plausibility does not require probability, but does require something "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Bell Atl.*, 550 U.S. at 556). That is, "the complaint taken as the whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." *Atkins v. City of Chi.*, No. 09-2998, 2011 WL 206155, at *6 (7th Cir. Jan. 25, 2011). In other words, the plaintiff "must plead some facts that suggest a right to relief that is

---

[2] Rule 7008 Fed. R. Bankr. P. ordinarily applies only in Adversary proceedings and not in contested matters. *See* Fed. R. Bankr. P. 9014(c). However, pursuant to Rule 9014(c), it was ordered by the Final Pretrial Order dated Oct. 4, 2010 [Docket. No. 258], which applied to all of the Counts in Debtor's Objection and Counterclaim, that all rules applicable to Adversary proceedings except the requirement for service of summons apply thereto.

beyond the 'speculative level.'" *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009).

> "Plausibility" in this context does not imply that the district court should decide whose version to believe, or which version is more likely than not. ... [T]he plaintiff must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself *could* these things have happened, not *did* they happen. For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences.

*Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (emphasis in original).

Here, Debtor's case as pleaded in Count II for tortious interference rested on allegations that CenterPoint and Gates colluded to interfere with settlement negotiations between Debtor and the MPEA in order to facilitate CenterPoint's ambitions to acquire all of Debtor's property through foreclosure. However, key allegations were pleaded "on information and belief." Debtor did not allege how CenterPoint and Gates colluded, specific acts by Gates that interfered with the negotiations, or when such acts took place. The mere fact that Gates, an individual once affiliated with CenterPoint, sat on the MPEA board when Debtor was conducting its doomed settlement negotiations does not by itself show that he ever involved himself in matters concerning Debtor's property. Nor does it support an inference that Gates did anything on behalf of CenterPoint to doom those negotiations. Debtor's bare assertion that Gates performed at some indefinite date some unspecified act at CenterPoint's behest cannot be treated as plausible. For these reasons, Count II was dismissed for failure to state a plausible claim. However, Debtor was given time to take discovery and replead.

### III. COUNT II WILL NOW BE DISMISSED WITH PREJUDICE

A trial court has the inherent authority to dismiss a case and control its docket. *Moser v.*

*Universal Engineering Corp.*, 11 F.3d 720, 723 (7th Cir. 1993). "This power derives from the need for courts 'to manage their own affairs so as to achieve the orderly and expeditions disposition of cases.'" *Id.* (quoting *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630–31 (1961)). "Changing the terms of a dismissal order from without prejudice to with prejudice is within the district court's authority." *Id.* at 724. Such a sanction is available to trial courts to ensure compliance with court orders and rules, "to deter parties from proceeding in a dilatory fashion," and "to promote the orderly and efficient administration of justice." *Id.* at 725. However, where a case was previously dismissed without prejudice and the plaintiff had no obligation to further litigate the case, the parties should be given the opportunity to address whether dismissal with prejudice is appropriate. *Id.* at 725–26. That was done here.

After Count II was dismissed with leave to amend, Debtor was given ample opportunity to take discovery and come forward with an Amended Count II if it obtained facts to satisfy federal pleading requirements. Count II was originally dismissed on October 20, 2010 [Docket No. 286], and Debtor was ordered to file any Amended Count II by November 15, 2010. On November 19, 2010, Debtor presented a Motion to Extend Time to File Amended Count II [Docket No. 352], citing CenterPoint's alleged recalcitrance in responding to discovery requests as the cause of the delay. That motion was granted [Docket No. 363], and Debtor was given until December 8, 2010, to file its Amended Count II.

Debtor did not file an Amended Count II by that date, so the parties were ordered [Docket Nos. 415, 458] to brief the issue of whether the order dismissing Count II should be amended to dismiss with prejudice pursuant to Rule 41(b) Fed. R. Civ P. (made applicable by Fed. R. Bankr. P.). The briefing on that issue was concluded on January 10, 2011. CenterPoint argued for

dismissal with prejudice, contending that (1) Debtor had ample opportunity to amend and (2) any amendment would be futile because, in its view, any claim by Debtor for tortious interference would fail as a matter of law anyway. Debtor elected not to address the standards for dismissal with prejudice. Instead, it moved on January 12, 2011, for a further extension of ten days to file an Amended Count II. This time, Debtor claimed that it was having trouble receiving requested discovery from the MPEA. Debtor's motion was continued until January 25, 2011, to see if Debtor would proffer an Amended Count II by then. On January 25, 2011, rather than proffering a proposed Amended Count II, Debtor moved [Docket No. 563] to extend time to file an Amended Count II for an indefinite "short period of time" in order to obtain more discovery from the MPEA. Because there was no Amended Count II then on file, Debtor's motion for a ten-day extension was denied as moot [Docket No. 592]. It was announced from the bench on January 25, 2011, that the issue of dismissal with prejudice was then taken under advisement, as was Debtor's motion for a "short" but indefinite extension. This left open the chance for Debtor to proffer an Amended Count II while the issue as to prejudice was being decided. More than two weeks have since passed, but Debtor still has not proffered an Amended Count II.

It has been more than sixteen weeks since Count II was originally dismissed, during which Debtor had rights to take discovery from CenterPoint and any third parties. During that time, Debtor has apparently not been able to discover sufficient facts to support its claim of tortious interference. Instead, Debtor seeks through its still-pending and unamended motion for indefinite extension of time an undefined extension of time to take more discovery from yet more people, always claiming that it is close to finding something.

This bankruptcy case has been determined [Docket No. 157] to involve "single asset real

estate" under 11 U.S.C. § 101(51B) and must move on a fast time line. *See* 11 U.S.C. § 362(d)(3) (creditor may seek relief from the automatic stay as to single asset real estate if debtor does not within a short time line propose a plan of reorganization with a reasonable possibility of being confirmed within a reasonable time). The hearing on adequacy of any disclosure statement filed by Debtor related to its reorganization plan is presently scheduled for March 7, 2011, but is likely to be reset until after Count III is decided. The trial on Count III, which was scheduled for a full week, has been reset on Debtor's motion to the week starting on March 14, 2011. It is contemplated that a plan confirmation hearing will take place in May 2011, twelve months after the bankruptcy case was filed. By that time, Debtor must demonstrate the likelihood of financing to fund its Plan. Therefore, the final determination of the valid amount due to CenterPoint must earlier be determined so that amount of needed financing is clear.

Both Count II and Count III essentially sought to bar and offset part or all of CenterPoint's claim. It is therefore absolutely necessary to the forthcoming hearing on Plan confirmation that the success or failure of those claims be determined before the Plan hearing, so that the valid amount of CenterPoint's claim can be finally determined and the scope of Debtor's requirement through a Plan to deal with that claim can be clear. Both of those Counts must therefore be resolved prior to the hearing on Plan confirmation. Moreover, if a plausible Count II had been pleaded, it should have been set for trial along with Count III since much of the evidence would overlap. The indefinite extension of time that is sought by Debtor within which to file an Amended Count II invites the possibility for need to try Count II at a later date separate from Count III and with overlapping evidence.

Because Debtor has had ample time for discovery and has failed to amend its Count II

after such a long history, and because it is necessary that remaining issues in this bankruptcy case be resolved in an orderly and efficient manner, Count II must now be dismissed with prejudice.

## CONCLUSION

For reasons stated, the pending motion of Debtor for indefinite extension of time within which to file Amended Count II will be denied by separate order, and a separate amended order will be entered dismissing Count II with prejudice under Rule 41(b) Fed. R. Civ. P. (made applicable by Rule 7041 Fed. R. Bankr. P.).

ENTER:

_____
Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 14th day of February, 2011.