**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | Chapter 11 |
| | ) | |
| OLDE PRAIRIE BLOCK OWNER, LLC, | ) | Bankruptcy No. 10 B 22668 |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM OPINION ON CENTERPOINT'S**
**MOTION FOR STAY PENDING APPEAL [Docket No. 754]**

On March 11, 2011, an Order was entered authorizing Debtor in this Chapter 11

bankruptcy case to enter into post-petition financing and to grant the new lender, among other

things, a priming lien on property subject to a pre-petition lien of CenterPoint Properties Trust

("CenterPoint"). On March 13, 2011, CenterPoint filed a Notice of Appeal of that Order [Docket

No. 753] and a Motion for Stay Pending Appeal [Docket No. 754]. On March 14, 2011, Debtor

filed a Motion to Amend the Findings and Order [Docket No. 760], making the Notice of Appeal

ineffective to appeal from the Order. Fed. R. Bankr. P. 8002(b).

Today, Debtor's Motion to Amend was granted in part through entry of an Amended

Order and Amended Findings of Fact and Conclusions of Law. The Notice of Appeal is now

effective, and CenterPoint's Motion for Stay Pending Appeal must be addressed to the extent it is

intended to apply to the Amended Order.

An order entered in a bankruptcy case may be stayed pending any appeal of that order.

Fed. R. Bankr. P. 8005. In deciding whether to grant a stay, courts consider: (1) whether the

movant is likely to succeed on the merits of the appeal; (2) whether the movant will suffer

irreparable injury absent a stay; (3) whether a stay would substantially harm other parties; and (4)

whether a stay is in the public interest. *In re Forty-Eight Insulations, Inc.*, 115 F.3d 1294, 1300 (7th Cir. 1997).

First, it is clear that CenterPoint has not demonstrated any mistake of law or fact in the ruling. In its Motion, CenterPoint argues that a stay should be granted because it is likely to succeed in its earlier appeal of an entirely different matter, an Order Denying CenterPoint's Motion to Amend the Findings [Docket No. 417]. CenterPoint makes no argument whatsoever about whether it might succeed in *this* appeal.

Even if success in that other appeal were relevant to this Motion for Stay Pending Appeal, CenterPoint still could not demonstrate likelihood of success on the merits here. CenterPoint's earlier appeal essentially challenges earlier findings as to the value of Debtor's property. After the final hearing on CenterPoint's Motion for Relief from Stay, it was found [Docket No. 313 and attached hereto as Exhibit A] that Debtor's properties were worth $81,150,000, far more than CenterPoint's claim of $48,000,000. The Amended Order that CenterPoint now appeals from relies in part on that equity cushion as a basis for finding CenterPoint's interest adequately protected, as required under 11 U.S.C. § 364(d). The equity cushion earlier found was $33,150,000. Such a large equity cushion clearly provides adequate protection of CenterPoint's interest against any diminution in value that results from the relatively small (approximately $2 million) priming lien approved in the Amended Order. CenterPoint is not likely to prevail on this point on appeal.

CenterPoint also reargues its earlier assertion that the Court first adjudicated a lower value, then revised the value found without hearing new evidence. That assertion was earlier rejected in denial of CenterPoint's Motion to Alter or Amend the ultimate finding [Docket No.

-2-

417 and attached hereto as Exhibit B]. Essentially, CenterPoint misconstrued the early remarks from the bench as an adjudication, when those remarks were only preliminary impressions before the evidence was digested and a ruling later announced.

Nor will CenterPoint be irreparably harmed if a stay is not granted. Apart from the large equity cushion, the Amended Order authorizes CenterPoint to repay the new loan and cancel out the new lender's priming lien should the Chapter 11 bankruptcy case fail and be dismissed. This protects CenterPoint from any harm that might result if the Amended Order is not stayed.

On the other hand, Debtor will suffer harm if the Amended Order is stayed. It would be unable to fund many projects and services that are necessary to continue its development and to obtain a refinancing of CenterPoint's loan. A stay would essentially halt Debtor's progress towards confirmation until any appeal is resolved, and would allow CenterPoint success in its obvious effort to block confirmation. Recent evidence taken in a related proceeding has established that CenterPoint's "best case scenario" when it made the loan to Debtor was to foreclose and obtain the prime location owned by Debtor. Blocking the loan and priming lien would prevent Debtor from obtaining needed financing and kill the Chapter 11 reorganization.

For these reasons, CenterPoint's Motion for Stay Pending Appeal will be denied. An order in accord with the forgoing will separately be entered.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this ___ day of March, 2011.

-3-

# Exhibit A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE:               )          Chapter 11
                     )
OLDE PRAIRIE BLOCK OWNER, LLC,   )          Bankruptcy No. 10 B 22668
                     )
      Debtor.             )

## FINDINGS OF FACT AND CONCLUSIONS OF LAW ON
## CENTERPOINT'S MOTION TO LIFT STAY [Docket No. 21]

After the final hearing on the Motion to Lift Stay filed by CenterPoint Properties Trust

("CenterPoint"), for reasons stated from the bench, an order was entered conditionally denying

the Motion [Docket No. 241]. The following will stand as Findings of Fact and Conclusions of

Law that supplement the oral ruling of September 17, 2010.

### FACTS AND BACKGROUND

Olde Prairie Block Owner, LLC, ("Debtor") filed for bankruptcy relief under Chapter 11

on May 18, 2010. Debtor owns two parcels of real estate that, because of their proximity to

McCormick Place, Debtor hopes to develop into a hotel complex. The first parcel, known as the

"Olde Prairie Property," is located at 230 E. Cermak Road in Chicago, and the second, known as

the "Lakeside Property," is located across the street at 330 E. Cermak Road. The Olde Prairie

Property was at the time of the hearing the subject of a condemnation proceeding initiated by the

Metropolitan Pier and Exposition Authority ("MPEA").[1] Debtor also holds a long-term lease (the

"Parking Lease") with the MPEA that allows Debtor rent-free use of 450 parking spaces at the

---

[1] The MPEA has since sought and received a stay modification to allow it to dismiss the
condemnation proceeding.

-1-

McCormick Place parking garage until the year 2203.

On February 22, 2008, Debtor executed a promissory note evidencing a loan from CenterPoint in the amount of $37,127,667.03 and secured by Debtor's real estate. The note matured and was due and payable on February 21, 2009, but Debtor defaulted. CenterPoint filed a foreclosure action on February 24, 2009, and on May 28, 2009, the Circuit Court of Cook County appointed a receiver to manage Debtor's properties. When Debtor filed for bankruptcy, it owed CenterPoint $48,438,758.49 on the note.

On June 2, 2010, CenterPoint moved to dismiss Debtor's bankruptcy case, or in the alternative to modify the automatic stay so as to permit the foreclosure action to proceed. The stay motion was heard separately from the motion to dismiss, and a preliminary hearing was held on July 22 and 23, 2010. Following that hearing, for reasons stated from the bench, it was found and held that there was a reasonable likelihood that Debtor would prevail at conclusion of the final hearing.

The final hearing commenced on August 19, 2010. At that hearing, the parties presented evidence on several issues, but the value of Debtor's properties was the primary issue litigated. Each presented an expert real estate appraiser, and their opinions as to the values of Debtor's properties varied widely.

## A. Debtor's Expert

Debtor's expert valued Debtor's properties at a total of $94,650,000. Noting the properties' proximity to McCormick Place and the need for hotel rooms to serve the convention business there, he determined that the highest and best use of the properties was for hotel development. He then compared Debtor's properties to other parcels of land that had been

purchased for hotel development, a process known as the sales comparison approach. For the

Parking Lease, he also used an income capitalization approach to confirm his results from the

sales comparison analysis. Using these methods, he determined that the value of the Olde Prairie

Property was $15,300,000; of the Lakeside Property, $45,600,000; and of the Parking Lease,

$33,750,000.

## B. CenterPoint's Expert

CenterPoint's expert, however, valued Debtor's properties at a total of just $17,900,000.

The factor that accounts for most of the difference in values is a disagreement between the

experts over the highest and best use of the properties. Finding the case for hotel development

near McCormick Place unconvincing, CenterPoint's expert opined that the highest and best use is

to hold the property for future mixed-use (condominium and retail) development. He then used

the sales comparison approach to determine a value for Debtor's property using other properties

that had been purchased for mixed-use development. This process yielded property values that

are significantly lower than those found by Debtor's expert: $9,400,000 for the Olde Prairie

Property and $21,000,000 for the Lakeside Property.

But this was not the end of his analysis. He then performed a discounted cash flow

analysis, assuming that the property would be held for four years before it was developed and

discounting his concluded value from that date. This next step lowered his final values for the

properties to $5,500,000 for the Olde Prairie Property and $12,400,000 for the Lakeside Property.

CenterPoint's expert would have provided an opinion that the value of the Parking Lease

was zero, but that opinion was stricken because it was not timely disclosed under the Pretrial

Order.

-3-

## C. Other Evidence of Value

Apart from its expert reports, Debtor provided some additional evidence of the value of

two properties. Before it commenced its condemnation proceeding, the MPEA offered to

purchase the Olde Prairie Property for $17,700,000. That offer was apparently not accepted, as

the MPEA did file the condemnation proceeding, which remained pending at the time of the

hearing.

In addition, LAZ Parking Realty Investors, LLC, ("LAZ") sent a Letter of Intent to

Pamela Gleichman, Debtor's developer, outlining the terms of a transaction in which LAZ would

acquire the Parking Lease for $20,250,000. In the Letter, which was dated March 13, 2009, LAZ

contemplated a closing date of March 15, 2011. Debtor has not yet accepted or rejected the

Letter, but that offer is still open and evidence indicates that LAZ is still interested in the

transaction.

## DISCUSSION

### A. CenterPoint is Not Entitled to Relief from the Stay Because Debtor Has Proposed a Confirmable Chapter 11 Plan

Under § 362 of the Bankruptcy Code, Title 11 U.S.C., relief from stay may be ordered if a

debtor in a Chapter 11 does not have equity in the property that is the subject of the creditor's

security and that property is not necessary to an effective reorganization. *United Sav. Ass'n of*

*Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 370 (1988). An effective

reorganization can include a liquidating plan. *In re Timbers of Inwood Forest Assocs., Ltd.*, 808

F.2d 363, 371 n.14 (1987) (en banc); *see also Timbers*, 484 U.S. at 375–76 (citing the Fifth

Circuit's opinion approvingly).

-4-

Debtor initially proposed a liquidating plan to which CenterPoint interposed a number of objections that could be dealt with by requiring plan amendments. There appeared to be a need for amendments to provide clarity, time lines for the plan, and need for court supervision.[2]

Since this has been found to be a single-asset case requiring early filing of a plan with prospects of confirmation, Debtor was ordered to amend the proposed plan expeditiously so as to provide the necessary clarity, time lines, and court supervision. As of September 17, 2010, when the Motion for Relief from Stay was denied, Debtor's proposed plan was facially sufficient to show that Debtor could confirm a liquidating plan, albeit one that needed to be amended.

## B. CenterPoint Is Not Entitled to Adequate Protection Because its Interest Is Not Declining in Value

A creditor is entitled to adequate protection in Chapter 11 only if the creditor's interest in the debtor's property is declining in value. *Timbers*, 484 U.S. at 371. In this case, the properties in which CenterPoint has an interest are not declining in value during the bankruptcy. Therefore, Debtor need not provide CenterPoint adequate protection so long as it maintains the value that existed when the bankruptcy case was filed. To maintain that value, Debtor must pay all post-petition real estate taxes and take all steps needed to avoid a lien by the special receiver who was appointed to bring the property up to City Code.

## C. An Equity Cushion Has Been Established

If adequate protection of CenterPoint's interest was necessary, a large equity cushion may

---

[2] Debtor has since filed an Amended plan. That plan seeks to raise capital to pay off CenterPoint, and Debtor has employed a financial advisor to seek investors. The plan also provides for partial liquidation in event investors cannot be found. That plan will be dealt with through pleadings since filed, including a new Motion by CenterPoint to modify stay that, *inter alia*, attacks the viability of Debtor's Amended plan.

suffice. *See In re Aaura, Inc.*, No. 06 B 01853, 2006 WL 2568048, at \*2 (Bankr. N.D. Ill. Sept.

1, 2006) (citing *In re James Wilson Assocs.*, 965 F.2d 160, 171 (7th Cir. 1992); *In re Markos*

*Gurnee P'ship*, 252 B.R. 712, 716–17 (Bankr. N.D. Ill. 1997)). In this case, it is clear that Debtor

does have an equity cushion. Contrary to some comments in the original oral remarks from the

bench, based on the evidence it is a large cushion but of uncertain protection for reasons stated

below.

Debtor's expert opined that the value of the Olde Prairie Property was $15,300,000, and

the MPEA's pre-condemnation offer to purchase that property for $17,700,000 gives credence to

that opinion. Regarding the Parking Lease, the Letter of Intent from LAZ persuasively shows that

the relevant market for possible uses of the property values the Lease at $20,250,000, which was

less than the value found by Debtor's expert. Therefore, it is found and held that the value of the

Olde Prairie Property is $15,300,000 and the value of the Parking Lease is $20,250,000.

Unfortunately, Debtor did not provide any firm market-supported offers for the Lakeside

Property. The value of that property, therefore, depends on the relative credibility of each party's

expert appraiser. In this respect, it must be found that Debtor's expert was more credible than

CenterPoint's expert. The latter's rejection of hotel development as the highest and best use of

Debtor's properties cannot be accepted: the proximity to McCormick Place, the scarcity of

nearby hotel rooms, and the oversupply of condominiums in the area all point to hotel

development as the highest and best use. Moreover, the expert's use of a discounted cash flow

analysis to reduce the valuations based upon sales is a further reason to reject his opinions.

Although he claimed that such analysis was approved by a learned treatise on appraisal, that

source does not appear to countenance that use of the method. *See generally* Appraisal Institute,

-6-

*The Appraisal of Real Estate* 297–376 (13th ed. 2008).

Since Debtor's principals have been seeking investment capital for a long time without success, there is some reason to wonder whether its expert's valuation is more valid as a future reality than as current value. That concern was reflected in some of the remarks from the bench. However, the expert's analysis was based on recent comparables, including some vacant properties wherein it is logically concluded that buyers in those transactions discounted future value when making an offer. Moreover, the creditor's expert refused to accept hotel usage as the highest and best use. Therefore, his appraisal must be rejected, leaving only the opinion of Debtor's expert for guidance. Following Debtor's expert, it is found and held that the value of the Lakeside Property is $45,600,000.

Combining these valuations, the total value of Debtor's property is found to be $81,150,000. This is far more than the approximately $48,000,000 that CenterPoint now claims to be owed by Debtor. Accordingly, Debtor holds a large equity cushion, albeit one based in large part on theoretical appraisals not yet supported fully by marketplace interests.

## CONCLUSION

Because the value of Debtor's properties is not declining, and because there is a plan in the offing that can likely be amended so as to be confirmable, CenterPoint's Motion for Relief from Stay was denied conditionally (with respect to real estate taxes and needed repairs) by order entered on September 30, 2010, *nunc pro tunc* to September 17, 2010 [Docket No. 241].

The alternative Motion of CenterPoint to dismiss the case rested partly on grounds asserted for stay modification (which have been rejected) and partly on assertions that this is a bad faith filing. The essence of bad faith is inability to confirm a Chapter 11 plan, and that has

not yet been demonstrated. While dismissal is not presently appropriate because stay relief has

been denied and a viable plan remains possible, the alternative Motion to Dismiss will be kept

alive on status as a vehicle to permit case dismissal if Debtor's reorganization fails.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 29th of October, 2010.

# Exhibit B

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

IN RE:                                  )        Chapter 11
                                        )
OLDE PRAIRIE BLOCK OWNER, LLC,          )        Bankruptcy No. 10 B 22668
                                        )
       Debtor.                          )

## OPINION ON CENTERPOINT'S MOTION TO AMEND [Docket No. 347]

This Motion is the latest salvo in a battle between Olde Prairie Block Owner, LLC,

("Debtor") and CenterPoint Properties Trust ("CenterPoint") over efforts of Debtor to retain

ownership of its real estate which secures a CenterPoint loan. Debtor filed under Chapter 11 of

the Bankruptcy Code on May 18, 2010. Soon after, on June 2, 2010, CenterPoint moved to

dismiss Debtor's bankruptcy case, or in the alternative to modify the automatic stay so as to

permit a foreclosure action to proceed. The stay motion was heard separately from the motion to

dismiss, and a preliminary hearing was held on June 22 and 23, 2010. Following that hearing, for

reasons stated from the bench, it was found and held that there was a reasonable likelihood that

Debtor would prevail at a final hearing.

The final hearing on the stay motion was held, and evidence was taken including

evaluations of property values presented by experts called by each party. On September 17, 2010,

(the last day agreed to by the parties for ruling on the motion before the stay would expire by

law)[1] it was announced from the bench that CenterPoint's motion would be conditionally denied,

---

[1] Under the Bankruptcy Code, motions for stay relief must move at an expedited pace. *See*
11 U.S.C. § 362(e).

and oral remarks from the bench preliminarily explained the forthcoming ruling (the "Oral

Remarks"). Because the creditor's loan was found fully secured and the value of collateral was

not declining, it was announced that the stay motion would be denied. Additionally, some doubt

was expressed as to the opinion of each party's expert. Given these weaknesses, Debtor was not

then seen to have an equity cushion in its properties. No specific findings were made as to values

of the subject properties, but it was opined that the CenterPoint loan was fully secured and values

of the properties were not diminishing.

On September 28, 2010, an order was entered *nunc pro tunc* to September 17, 2010, (the

"Stay Relief Order") conditionally denying CenterPoint's stay motion.[2] That Order attached a

transcript of the Oral Remarks. Both the Oral Remarks and the Stay Relief Order provided that a

---

[2] The Stay Relief Order read in full:

> This matter coming on to be heard on the Motion to Dismiss Chapter 11 Case for
> Cause or, in the Alternative, to Lift the Automatic Stay to permit Foreclosure Action to
> Proceed and Retaining Court-Appointed Receiver (the "Lift Stay Motion") filed by
> CenterPoint Properties Trust ("CenterPoint"), and after reviewing the argument, evidence,
> and pleadings presented by CenterPoint and the Debtor, and as more completely
> described in the transcript of the proceedings before this Court on September 17, 2010
> (the "Ruling"), *which the court shall supplement in a subsequent written ruling (the
> "Written Ruling")*, IT IS HEREBY ORDERED that:
>
> 1.    CenterPoint's Lift Stay Motion is conditionally denied for the reasons identified
>       by the Court, and on the conditions set forth, in the ruling from the bench, the
>       transcript of which is adopted and incorporated by reference herein and attached
>       hereto as exhibit A.
> 2.    CenterPoint and the Debtor are hereby ordered to perform all of the acts required
>       in the Ruling including without limitation (i) the Debtor's timely payment of
>       property taxes and repairs to its properties as required by the City of Chicago,
>       without allowing CenterPoint's collateral to be charged, and (ii) the filings on or
>       before October 1, 2010, (a) by the Debtor of an Amended Plan for this case as
>       directed, and (b) by CenterPoint a report with respect to the pending
>       condemnation action concerning the Debtor's property in the Circuit Court of
>       Cook County, Illinois, respectively, and delivery of required document copies to
>       Debtor's counsel, all as required and set forth in Exhibit A.
> 3.    This Order is entered nunc pro tunc as of September 17, 2010, when the Ruling
>       was announced.
> 4.    Ruling is reserved on alternative Motion of CenterPoint to Dismiss this Chapter
>       11 Case.
> (emphasis added).

more complete "Written Ruling" would be entered later, and neither party objected. On October

29, 2010, Findings of Fact and Conclusions of Law [Docket No. 313] (the "Written Ruling")

were made and ordered to be entered. In the Written Ruling, it was concluded that, while some

market evidence corroborated the opinion of Debtor's expert, the opinion of CenterPoint's expert

should be rejected entirely. Therefore, it was found and concluded that the total value of all

subject properties was $81,150,000, giving Debtor an equity cushion over CenterPoint's asserted

claim.

Appraisals of real estate are admissible when prepared by recognized experts in real

estate valuation who use accepted methods and proper assumptions for such evaluations.

*See* Fed. R. Evid. 702. However, those methods do not have scientific weight and usually do little

more than provide useful opinions as to the high and low range of values that would-be buyers

and sellers of the real estate would offer or demand after using the same method. Then it usually

remains for the judge to choose which of the calculations of value used the right comparables, the

right capitalization rate and other factors, and whether the opinions were corroborated by some

market indications. The judge then usually adjusts one or another appraisal to a point within the

high and low ranges of value.

However, once it was determined here that the opinion of CenterPoint's expert was

totally flawed by its false assumption as to highest and best use, the only evidence remaining was

that supplied by Debtor's expert, which was partially corroborated by market history. Therefore,

the doubts implied in the Oral Remarks from the bench as to strength of valuation by Debtor's

appraiser were only concerns based on the Court's experience in trials of property valuations that

never produced certainty and often were far off from ultimate sales. Those doubts based on

-3-

experience that were voiced could not in the end be relied on in place of the only evidence that remained to be considered once CenterPoint's expert was rejected.

CenterPoint now moves to amend the Written Ruling pursuant to Rule 7052 Fed. R. Bankr. P. It seeks to have the Written Ruling amended, but does not attack the Stay Relief Order which denied its Motion to Modify Stay. For reasons discussed below, CenterPoint's motion is timely and will be granted in part, but mostly denied.

## DISCUSSION

## I. CENTERPOINT'S MOTION TO AMEND WAS TIMELY FILED

A motion for amended or additional findings must ordinarily be filed within fourteen days after entry of judgment. Fed. R. Bankr. P. 7052. However, when a written opinion is entered after oral remarks and that opinion includes factual findings that were not contained in the oral remarks, the party seeking relief may have additional time to file its motion. *See Fin. Servs. Corp. of Midwest v. Weindruch*, 764 F.2d 197, 199 (7th Cir. 1985) (suggesting in dicta that additional time under Fed. R. Civ. P. 52(b) might be appropriate "if the [movant's] only complaint was about a finding that the judge added in his [later order]").

CenterPoint filed its Motion to Amend on November 12, 2010, forty-five days after the Stay Relief Order was entered, but only fourteen days after the Written Ruling was entered. Because CenterPoint complains of assertedly new and contradictory factual findings in the Written Ruling that it could not have objected to within fourteen days of entry of the Stay Relief Order, its current Motion to Amend should be considered timely. Moreover, Debtor has not objected to the timeliness of CenterPoint's Motion. Therefore, the Motion to Amend is deemed timely filed.

## II. CENTERPOINT'S MOTION TO AMEND FINDINGS WILL BE GRANTED IN PART AND DENIED IN PART

"On a party's motion . . ., the court may amend its findings—or make additional findings—and may amend the judgment accordingly." Fed. R. Civ. P. 52(b) (made applicable here by Fed. R. Bankr. P. 7052).

> Motions made under Fed. R. Civ. P. 52(b) . . . are not intended merely to relitigate old matters nor are such motions intended to allow the parties to present the case under new theories. Instead, these motions are intended to correct manifest errors of law or fact or to present newly discovered evidence.

*Evans, Inc. v. Tiffany & Co.*, 416 F. Supp. 224, 244 (N.D. Ill. 1976).

CenterPoint does not discuss these standards for granting relief under Rule 52(b), but it appears the grounds for CenterPoint's motion are four separate asserted errors of law: (1) that there was no authority to make new findings in the Written Ruling; (2) that the law of the case doctrine barred the value findings made subsequent to the Oral Remarks; (3) that it was error to find that Debtor proposed a reasonable plan that was confirmable in a reasonable time; and (4) that it was error to rely on a learned treatise cited by its expert in testimony.

### A. The Later Filing of Written Ruling Was Permitted Under the Order Denying Stay Relief

CenterPoint's first argument is that there was no authority to enter the later Written Ruling. Specifically, it argues that a court cannot on its own amend findings under Rule 52(b) Fed. R. Civ. P. or any other authority, and that even if Rule 52(b) did permit that, a court could not act outside the fourteen-day period prescribed by Rule 7052 Fed. R. Bankr. P. This argument overlooks a separate source of authority for the filing of the Written Ruling: the Stay Relief Order itself. The Written Ruling was not entered upon a *sua sponte* motion under Rule 7052 or

any other Rule, but under the authority of and as forecast by the Stay Relief Order, which explicitly provided that the Oral Remarks would be supplemented by later written findings and conclusions. CenterPoint did not object to that provision and has not appealed the Stay Relief Order. *See In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) (orders refusing to lift or modify the automatic stay are final and appealable).

CenterPoint also argues that the Written Ruling did not merely "supplement" or "explain" the Oral Remarks, as permitted in the Stay Relief Order, because the Written Ruling differed from the Oral Remarks as to whether an equity cushion existed. This semantic argument relies on a narrow, incorrect definition of "supplement." A "supplement" is: "[s]omething added to complete a thing, make up for a deficiency, or extend or strengthen the whole" or "[a] section added to a book or document to give further information or to correct errors." *The American Heritage Dictionary of the English Language* 1292 (1981). It was clear that the Oral Remarks were not final. Those Remarks were lacking in detail: no actual dollar amounts were mentioned for the amount of debt or the value of any parcel of Debtor's property. Moreover, the Court's concerns were expressed as to the strength of opinions by both appraisers, concerns that were to be dealt with in the Written Ruling. The Written Ruling, therefore, was to fill in the obvious gaps in discussions of evidence relevant to the stay motion and were to supplement and flesh out the Oral Remarks, as provided in the Stay Relief Order.

Because the Stay Relief Order provided for a subsequent Written Ruling and the ultimate Findings did supplement the Oral Remarks, there was no error of law regarding authority to enter the Written Ruling, including the specific findings as to values now contested.

## B. The Law of the Case Doctrine Does Not Bar the Written Findings of Value

"As a general principle of judicial decision-making, the doctrine of the law of the case establishes a presumption that a ruling made at one stage of the proceedings will be adhered to throughout the suit." *Alston v. King*, 157 F.3d 1113, 1116 (7th Cir. 1998) (citing *Messinger v. Anderson*, 225 U.S. 436, 444 (1912)). The doctrine "is a flexible rule, which 'merely expresses the practice of courts generally to refuse to reopen what has been decided . . . .'; it is 'not a limit on their power.'" *Monfils v. Taylor*, 165 F.3d 511, 520 (7th Cir. 1998) (quoting *Messinger*, 225 U.S. at 444). The strength of that presumption "varies with the circumstances; it is not a straightjacket," *Avitia v. Metro. Club of Chi., Inc.*, 49 F.3d 1219, 1227 (7th Cir. 1995), and is especially weak when a decision is "avowedly tentative," *see Johnson v. Burken*, 930 F.2d 1202, 1207 (7th Cir. 1991).

CenterPoint argues that the law of the case doctrine bars the written finding as to property value because of the earlier oral statement from the bench that Debtor's realty lacked a significant equity cushion even though its value fully secured the creditor's lien. However, that oral statement as to value was clearly tentative as the Court prepared to analyze the large volume of evidence, including thick appraisal opinions. The Oral Remarks were made to provide guidance to counsel as to the general reasons that stay relief would be denied. It was stated several times in those Oral Remarks that final, formal, and written findings of fact and conclusions of law would be entered later after the Stay Relief Order was entered. Further, the Oral Remarks contained no actual findings as to the dollar amounts of the debt owed by Debtor to CenterPoint or the values of Debtor's various properties. Finally, the Written Ruling more fully gave grounds for the prior Order, and did not change the Order.

-7-

For all of these reasons, it is clear that the Oral Remarks were tentative, to be supplemented later by the Written Ruling. Therefore, the law of the case doctrine does not bar the later precise finding as to values of Debtor's properties, which supported the same result as originally announced but with added findings as to debt due and values of the parcels involved.

## C. CenterPoint Cannot Relitigate the Issue of Whether Debtor Filed a Plan of Reorganization That Had a Reasonable Possibility of Confirmation Within a Reasonable Time

CenterPoint next argues that it was error to find that Debtor had filed a plan of reorganization that had a reasonable possibility of confirmation within a reasonable time. In support, it argues that Debtor's plan cannot be confirmed until August 2011. CenterPoint does not explain how it arrived at that date, which does not appear to be supported by the record.[3] Moreover, CenterPoint earlier raised this issue in the Second Renewed Motion of CenterPoint Properties Trust to Lift the Automatic Stay to Permit Foreclosure Action to Proceed [Docket No. 252], which was denied by Order [Docket No. 327] for reasons stated on the record on November 2, 2010. That Order was not appealed. *See In re James Wilson Assocs.*, 965 F.2d 160, 166 (7th Cir. 1992) (orders refusing to lift or modify the automatic stay are final and appealable). Therefore, CenterPoint has not shown an error in the determination that Debtor may be able to confirm a Plan and cannot now relitigate the issue.

## D. Statements in the Written Ruling Regarding Contents of *The Appraisal of Real Estate* Will Be Stricken

CenterPoint's final argument for amending the Written Ruling is that it was error to rely

---

[3] Debtor is making progress towards possible plan confirmation. The next step, a hearing to consider the approval of the disclosure statement, is scheduled for December 10, 2010, at 11:30 A.M., and trial on issues involved in Debtor's counterclaim to the CenterPoint claim is scheduled for February 3, 4, 7, 8, 9, 10, and 11, 2011 (Final Pretrial Order [Docket No. 258]).

upon *The Appraisal of Real Estate*, a treatise relied on and cited by CenterPoint's expert, to judge

that expert's credibility. In the Written Ruling, the opinion of CenterPoint's expert was rejected

in part because the method he used to account for holding costs was not found in the thirteenth

edition of *The Appraisal of Real Estate* as he had testified it was. That particular discussion was

based on a mistaken belief that the treatise had been admitted into evidence, which it was not,

although a page from it was argued and referred to by Debtor's counsel. Therefore, CenterPoint's

Motion to Amend will be granted in part to strike the critique of the expert's technique based

upon that treatise. *See Weise v. United States*, 724 F.2d 587, 590–91 (7th Cir. 1984) (approving

consideration of learned treatises and articles when marked as evidence and not objected to at

trial).

This does not change the ultimate outcome, however. The primary and dispositive reason

for rejecting the opinion of CenterPoint's expert was his mistaken selection of mixed-use

development as the highest and best use of Debtor's properties, an assumption that led to his low

opinion of value. CenterPoint has not challenged that part of the reasoning in the Written Ruling,

and thus it stands to support the ultimate Findings and Conclusions as to values of Debtor's

properties.

## CONCLUSION

CenterPoint's Motion will be granted in part and denied in part by separate order. The

Written Ruling will be amended to strike the critique of the opinion of CenterPoint's expert

based on the treatise *The Appraisal of Real Estate*, which was not admitted into evidence.

However, the remainder of the Written Ruling will stand.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 10 of December, 2010.

-10-